UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TENIAL WHITTED,<br><br>Plaintiff,<br><br>v.<br><br>SOUTH SUBURBAN COLLEGE BOARD OF TRUSTEES,<br><br>Defendant. | No. 1:25-CV-11345<br><br>Judge Edmond E. Chang |

## MEMORANDUM OPINION AND ORDER

Tenial Whitted began working for the South Suburban College in 2004.[1] R. 12, Am. Compl. ¶ 9. During her time with the College, Whitted worked as a Title IX investigator. *Id.* ¶¶ 14–18. In October 2024, Whitted told her supervisor that she planned to use her earned sick and personal days to take time off for mental health reasons. *Id.* ¶ 22. Shortly thereafter, Whitted submitted her resignation in November 2024, citing intolerable working conditions as the reason. *Id.* ¶ 23. But the College allegedly retroactively relabeled Whitted's resignation as a separation due to job abandonment, misconduct, and fraud, and placed this information in her personnel file. *Id.* ¶¶ 25, 28. Whitted also alleges that the College initially refused to pay her for some earned vacation time. *Id.* ¶ 31.

[1] Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. This Court has subject matter jurisdiction over the Americans with Disabilities Act claim under 28 U.S.C. § 1331 and supplemental jurisdiction over the Illinois Wage Payment and Collection Act and breach of contract claims under 28 U.S.C. § 1367(a).

So Whitted brings this suit, alleging unlawful retaliation under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, violation of the Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS 115/1, and breach of contract. Am. Compl. ¶¶ 37–39, 45–51. The College moves to dismiss the Amended Complaint in its entirety. R. 27, Def.'s Mot. For the following reasons, the Court grants the College's motion and dismisses the IWPCA and breach of contract claims with prejudice. The ADA claim is also dismissed, though the dismissal is without prejudice for reasons explained in this Opinion.

## I. Background

In deciding a motion to dismiss, the Court accepts well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor.[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Whitted began working at the College in October 2004. Am. Compl. ¶ 9. In October 2024, Whitted, who was the Director of Registration and Records at the time, informed the College that

[2]District courts may consider documents attached to a motion to dismiss without converting it to a motion for summary judgment when the documents are referenced in the complaint and central to the plaintiff's claim. *See 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). The College submitted the notice it received from the Department of Labor about Whitted's claim and Whitted's EEOC Charge of Discrimination with its motion to dismiss. *See* R. 27-1, Def.'s Exh. 1, IDOL Notice; R. 27-2, Def.'s Exh. 2, EEOC Charge. Both documents are referenced in the Amended Complaint and central to Whitted's claims. Am. Compl. ¶¶ 11, 32, 47–49. Courts may also consider exhibits attached to a plaintiff's brief opposing dismissal as long as that evidence elaborates on, but is not contradictory to, his complaint, *see Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *Peacock v. Rigsby*, 2016 WL 1383232, at *3 n.1 (N.D. Ill. Apr. 7, 2016), and the documents submitted by Whitted—which include the January 2025 letter from the College, the November 14, 2024, College Board of Trustees minutes approving her resignation, the July 2023 administrator agreement, and the December 6, 2024, termination letter—meet that requirement. Am. Compl. ¶¶ 3, 9, 23, 28, 43, 51. So the Court takes these documents into consideration for the purposes of deciding the motion to dismiss.

she would be using earned sick and personal days as time off for mental health reasons. *Id.* ¶ 22; R. 27-2, Def.'s Mot. Exh. 2, EEOC Charge at 1. While on leave, Whitted submitted her resignation on November 6, 2024, citing intolerable working conditions. Am. Compl. ¶ 23. She scheduled her last day to be November 27, 2024. *Id.* On November 14, 2024, the College's Board of Trustees allegedly approved Whitted's resignation during a regular meeting. R. 30, Pl.'s Resp. Exh. B, Agenda at 6.[3] A week after her resignation was approved, the College requested medical documentation from Whitted, which she provided. Am. Compl. ¶ 24.

But on December 6, 2024—after Whitted's resignation had already been accepted—the College retroactively labeled it as "job abandonment," R. 30, Pl.'s Resp. Exh. D, Termination Letter at 14, and described Whitted's medical leave as "misconduct" and "[ ]fraud," Am. Compl. ¶ 28; R. 30, Pl.'s Resp. Exh. A, Jan. 2025 Letter at 4–5. These statements were allegedly placed in Whitted's personnel file. Am. Compl. ¶ 28. So Whitted brings a claim against the College for unlawful retaliation under the ADA, alleging that she engaged in protected activity when she told her supervisor that she was using her earned personal and sick days for mental-health reasons and submitted medical documentation at the College's request, and that the College retaliated by retroactively reclassifying her resignation as a discharge. Am. Compl. ¶¶ 22–26; *see* Jan. 2025 Letter.

Whitted also alleges that her remaining vacation days were not paid out properly under Illinois law. On Whitted's date of resignation, she had 30 vacation

[3]Unless otherwise noted, citations are to the PDF page numbers of the filing.

days. Am. Compl. ¶ 30; Jan. 2025 Letter at 3. Eighteen vacation days were paid out during Whitted's absence from October 30, 2024, to November 4, 2024, leaving 12 vacation days eligible for compensation. Termination Letter at 14. The College told Whitted that the payout for those 12 days would be included in her final check to be processed on December 13, 2024. *Id.* But Whitted alleges that the College initially refused to pay her for those vacation days, so she pursued an administrative claim with the Illinois Department of Labor under the IWPCA. Am. Compl. ¶¶ 46–47. The Department told the College that if it paid Whitted's claim in full, it would not incur any fees or penalties. R. 27-1, Def.'s Mot. Exh. 1, IDOL Notice at 1. Around October 6, 2025, the Illinois Department of Labor stated that the IWPCA case was closed because the College paid the wages owed to Whitted. Am. Compl. ¶ 48. Whitted admits that the College paid out her claim, but argues the delayed payment warrants statutory penalties under the IWPCA. *Id.* ¶ 49.

In Whitted's view, the College's failure to pay the owed wages also constitutes breach of contract under Illinois law. *Id.* ¶ 50–51. She alleges that she suffers emotional distress, fears seeking new employment opportunities, and frequently doubts her own abilities because of the College's alleged retaliation. *Id.* ¶ 27A. But Whitted admits that the College's actions "have not directly impeded Plaintiff's professional opportunities to date." *Id.* The College moves to dismiss the Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Def.'s Mot. at 1.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[4] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). At the same time, the Supreme Court instructs that "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task." *Iqbal*, 556 U.S. at 679. The Seventh Circuit has drawn a context-dependent distinction between relatively straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## III. Analysis

In her response opposing the motion to dismiss, Whitted voluntarily withdrew her claims for Title VII retaliation, Title IX retaliation, and defamation per se. R. 31, Pl.'s Resp. at 1.[5] This Opinion addresses the remaining claims in the Amended Complaint, that is, the claims for ADA retaliation, underpayment under the IWPCA, and breach of contract.

### A. ADA Retaliation

The College argues that Whitted fails to state a claim for ADA retaliation because she did not request an accommodation, and thus did not engage in a statutorily protected activity. Def.'s Mot. at 10–11. Whitted responds that she engaged in protected activity under the ADA's retaliation provision when she disclosed her medical condition to her employer and submitted medical documentation in fulfillment of the College's request. Pl.'s Resp. at 2–6.

[5]On the same day that Whitted filed her response to the College's motion to dismiss, R. 29, she filed an "amended" response, R. 31, without leave of court and without explanation for the amendment. Because the amended response was filed on the same day as the original response, the College was not prejudiced by the amendment. Furthermore, the College does not contest Whitted's filing of the amended response. Thus, the Court grants Whitted leave to file the amended response. The amended response will supersede the original response, and all references to Whitted's response herein will be to the amended response, R. 31. But in the future, Whitted must seek leave of court before filing amendments; failure to do so may result in pleadings being summarily stricken.

The retaliation provision in the ADA "prohibits employers from 'discriminat[ing] against any individual because [he] has opposed any act or practice made unlawful by [the ADA] or … has made a charge [under the ADA].'" *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001) (quoting 42 U.S.C. § 12203(a)). "A plaintiff bringing a retaliation claim may present either direct evidence of discrimination or indirect evidence under the burden-shifting method" set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Kersting*, 250 F.3d at 1117. A required element under both the direct and indirect methods of proof to an ADA retaliation claim is that the employee engaged in statutorily protected activity by either (1) requesting an accommodation or (2) raising a claim of discrimination due to her disability. *See Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814–15 (7th Cir. 2015) (per curiam). Because Whitted does not bring a claim of discrimination under the ADA, *see* Am. Compl., she must adequately allege that she requested an accommodation from the College.

"The standard rule is that a plaintiff must normally request an accommodation before liability under the ADA attaches." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 608 (7th Cir. 2012) (cleaned up). Generally speaking, a request for intermittent days off fails to qualify as a request for accommodation. *Preddie*, 799 F.3d at 813–14; *see also Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999) ("[I]n most instances the ADA does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability."), *superseded in part by statute*, ADA Amendments Act of 2008, Pub. L. No. 110–325, 122 Stat. 3553, *as recognized in*

*Kinney v. St. Mary's Health, Inc.*, 76 F.4th 635 (7th Cir. 2023). In *Preddie*, the Seventh Circuit held that "periodic requests for [the plaintiff's] own health-related leave, … without more, does not qualify as 'protected activity' under the ADA." 799 F.3d at 815. There, the plaintiff took health-related leave to treat a medical condition. *Id*. at 813. He recorded a total of 23 absences, submitting documentation that explained the reasons for several of the absences. *Id*. at 810, 819. After the employee used up his paid leave, his supervisor advised him to request time off under the Family and Medical Leave Act (FMLA), but the employee did not do so. *Id*. at 811. Ultimately, the employer decided not to renew the employee's contract, so he brought an ADA claim. *Id*. at 811. The Seventh Circuit concluded that the plaintiff's requests for health-related leave were not requests for accommodation, so he failed to fulfill a required element of a retaliation claim under the ADA. *Id*. at 815.

Here, Whitted alleges that she "informed her supervisor that she would be taking time off for her mental health." Am. Compl. ¶ 22. She then used a combination of personal and medical days to satisfy her time off and recorded these dates on the department calendar. *Id.*; Jan. 2025 Letter at 2. Whitted specifies in her response brief that she told her supervisor that she needed "time off for mental health concerns arising from workplace conditions, compounded by the recent death of her father" and that her supervisor told her to record her leave on the shared departmental calendar.[6]

[6]Generally speaking, plaintiffs may assert additional facts in their responses to dismissal motions, as long as those facts are consistent with the complaint. *See Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997).

Pl.'s Resp. at 2. And Whitted points out that she submitted medical documentation at the College's request. Am. Compl. ¶ 24; Pl.'s Resp. at 2.

But crucially, Whitted does not allege—in either the Amended Complaint or her response brief—that she requested an accommodation from the College. *See generally* Am. Compl.; Pl.'s Resp. Nor does Whitted allege that she provided her supervisor with any details about what her mental health concerns were (beyond saying that her father's death had compounded the concerns), or how those concerns were impeding her from being able to perform her job duties. So she fails to fulfill her "initial duty" to "indicate to [her] employer that [she] has a disability *and* desires an accommodation." *Jones v. Ill. Dep't of Corr.*, 2020 WL 3050324, at *4 (N.D. Ill. June 8, 2020) (emphasis in original) (cleaned up); *see also Cloe v. City of Indianapolis*, 712 F.3d 1171, 1178 (7th Cir. 2013) ("Absent special circumstances, like a severe cognitive disability or mental illness, the employee's initial duty requires that he or she indicate to the employer that she has a disability and desires an accommodation." (cleaned up)), *overruled in part on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764–65 (7th Cir. 2016); *Hale v. Senior Suites Chi. Midway Vill., LLC*, 2026 WL 1283953, at *5–6 (N.D. Ill. May 11, 2026) (dismissing the plaintiff's ADA retaliation claim because she "does not allege that she sought an accommodation or raised a claim of a disability").

Whitted relies on *Cassimy v. Board of Education of Rockford Public Schools*, 461 F.3d 932 (7th Cir. 2006), to support her argument that she does not need to have used the magic term "ADA" when she requested leave for that request to qualify as

"protected activity." Pl.'s Resp. at 2. It is true that specific magic words are not required, but *Cassimy* does not help Whitted. In *Cassimy*, shortly after he took a leave of absence due to work-related stress and anxiety, the plaintiff, who was an elementary school principal, told the assistant superintendent for human resources that "it was impossible for him to function normally and that he was experiencing different levels of pressure on his brain," that "[h]e could not read or write," that "he could not get up in the morning to get dressed, and [that] he could not eat or sleep." *Cassimy*, 461 F.3d at 934. The school board designated his absence as medical leave under the FMLA "[w]ith this information in hand." *Id.* Eventually, the school board decided to reassign Cassimy from his previous position to a high school assistant principal position where he would develop the technology magnet theme of the school. *Id.* at 935. Cassimy then informed the assistant superintendent that he would not be able to work more than six hours a day during his first month back, and that he would not be able to work on any special projects for the first two months, which qualified as "statutorily protected expression" in the context of his ADA retaliation claim. *Id.* at 935, 938. In contrast, Whitted does not allege that she told the College *any* information about how her mental-health concerns were preventing her from performing her job. *See* Am. Compl. ¶ 22; Pl.'s Resp. at 2–3. So *Cassimy* does not support Whitted's argument that she engaged in protected activity. In sum, then, the ADA retaliation claim is dismissed. But the dismissal is without prejudice at this time, because this was the first version of the complaint tested by a dismissal motion. If Whitted wishes to re-plead the ADA retaliation claim, then she may file a Second Amended

Complaint by October 13, 2026. Otherwise, the dismissal of this claim will convert to a dismissal with prejudice.

**B. IWPCA**

The College argues that the wage-payment claim under the IWPCA should be dismissed because she chose to file her claim with the Illinois Department of Labor instead of bringing a civil action, and the claim has been satisfied and closed. Def.'s Mot. at 13. Whitted responds that the College's delayed payment of owed compensation for 11 months violates the IWPCA and should result in statutory penalties, interest, and equitable relief under the Act. Am Compl. ¶¶ 46, 49; Pl.'s Resp. at 10–11. But Whitted fails to address the College's argument that her claim is precluded by the IWPCA and, thus, waives any arguments on this issue. *See* Pl.'s Resp. at 10–11; *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). Perhaps this should not be surprising, given that Whitted alleges that she has already been paid the contested amount.

For the sake of thoroughness, the Court discusses the College's argument briefly. The IWPCA offers plaintiffs two ways to recover owed compensation from employers, through "the Department of Labor *or* in a civil action, but *not both*." 820 ILCS 115/14(a) (emphases added). Because Whitted filed an administrative claim with the Department of Labor, R. 27-1, Ex. 1, IDOL Notice, and the College paid the owed wages in the amount of $5,700 for 12 earned vacation days to Whitted, Am. Compl. ¶ 48; IDOL Notice, she cannot now relitigate her claim in a civil action against the College.

Whitted argues that courts have held that delayed payments of compensation under the IWPCA constitute a violation, citing *McCleary v. Wells Fargo Sec., LLC*, 29 N.E.3d 1087 (Ill. App. Ct. 2015). Pl.'s Resp. at 11. But in *McCleary*, the plaintiff did not allege that he was paid prior to bringing his lawsuit. *See McCleary*, 29 N.E.3d at 1090–92, 1096. In this case, Whitted alleges that she has already been paid by the College. Am. Compl. ¶¶ 32, 48. So *McCleary* does not apply here.

What's more, Whitted does not allege that the Department closed her case improperly. *See* Pl.'s Resp. at 10–11. The Department's notice to the College stated that it "may resolve this Claim informally without further proceedings and without incurring any fees or penalties by paying the full amount of the claim within 20 calendar days of this Notice." IDOL Notice. The College did so. Am. Compl. ¶¶ 32, 49. The Department then allegedly issued correspondence showing that Whitted's IWPCA case was closed. Am. Compl. ¶ 48.

What Whitted requests—statutory penalties, fees, and equitable relief, *id.* ¶¶ 46–49—is exactly what the Department waived in exchange for the College's payment in full. IDOL Notice. And under the IWPCA, if Whitted wanted to challenge the Department's decision to waive fees and penalties, she should have done so during the administrative claim process, *see* 820 ILCS 115/14(b-5) ("Penalties and fees under this Section may be assessed by the Department and recovered in a civil action brought by the Department in any circuit court or in any administrative adjudicative proceeding under this Act."), or brought an action in state court within 35 days from the date of the Department's final decision, 735 ILCS 5/3-103.

The Court holds that Whitted cannot relitigate the IWPCA claim through this lawsuit after already bringing an administrative action with the Department under 820 ILCS 115/14, and that Whitted has waived any argument challenging this conclusion by failing to address it in her response. Because Whitted has already pursued the administrative route and successfully recovered her owed wages without challenging the Department's resolution of her case, the IWPCA claim is dismissed with prejudice.

**C. Breach of Contract**

Finally, Whitted brings a claim for breach of contract based on the delayed payment of the owed compensation from the College. Am. Compl. ¶ 51. The College argues that Whitted fails to plead the existence of a valid and enforceable contract, fails to allege that she performed under a contract, and fails to allege that the breach resulted in damages. Def.'s Mot. at 14. As a threshold matter, Whitted may bring a claim for breach of contract against the College, even though she also brings an IWPCA claim. *See Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1319 (7th Cir. 1995).

To adequately state a claim for breach of contract under Illinois law, Whitted must allege: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004). Whitted's contract claim starts on shaky legs—she failed to plead the existence of a valid and enforceable contract in the Amended Complaint. Am. Compl. ¶¶ 51. Instead, Whitted submitted an unsigned copy of her employment contract for July 1,

2023, to June 30, 2024, *see* R. 30, Pl.'s Resp. Exh. C, 2023–2024 Contract, explaining that she does not have access to the 2024 contract, Pl.'s Resp. at 7. This copy does not establish the existence of a valid and enforceable contract. *See iMotorsports, Inc. v. Vanderhall Motor Works, Inc.*, 224 N.E.3d 221, 227 (Ill. App. Ct. 2022) (holding that the plaintiff failed to establish the first element of a breach of contract claim because the submitted agreement included an expiration date that predated the alleged breach even though the parties continued to conduct business after that expiration date). The Court cannot simply assume that a signed copy of Whitted's employment contract exists for the timeframe at issue. *See Hirschbach Motor Lines, Inc. v. Navistar, Inc.*, 832 F. Supp. 3d 816, 825 (N.D. Ill. 2026) (declining to speculate about the state of the contracts that may exist between plaintiffs and defendants). Whitted of course could allege the existence of a valid contract without having a copy of it, but she has not done so.

More importantly, Whitted's contract claim is also flawed because she has already received her owed compensation pursuant to the terms in her employment agreement. Am. Compl. ¶ 49; IDOL Notice. Whitted tries to plead around this fact by alleging that she suffered concrete financial harm, as well as physical and emotional distress, because of the College's initial refusal to pay her the owed compensation. Am. Compl. ¶ 27A. To the extent that Whitted alleges that she is entitled to compensatory damages, she has received her owed compensation. Am. Compl. ¶ 32. And Illinois does not allow punitive damages or emotional-distress damages for breaches of contract. *See Stafford v. Puro*, 63 F.3d 1436, 1443 (7th Cir. 1995) ("Illinois does not

allow punitive and emotional distress damages for breaches of contract."); *Maere v. Churchill*, 452 N.E.2d 694, 697 (Ill. App. Ct. 1983) ("In the contract area, damages for breach will not be given as compensation for mental suffering.").[7] So Whitted's claim for breach of contract is dismissed. The dismissal is with prejudice, because it would be futile to try to fix it given the limitation on contract-breach damages.

## IV. Conclusion

The College's motion, R. 27, is granted as to Whitted's state law claims, that is, the IWPCA claim (Count 5) and the contract-breach claim (Count 6). Both claims are dismissed with prejudice because amendment would be futile. The ADA retaliation claim (Count 2) is dismissed but with leave to amend, meaning Whitted may amend her complaint to re-plead facts against the College if she can do so in accordance with Civil Rule 11(b). *See Daker v. State Farm Fire & Cas. Co.*, 2021 WL 2877171, at *9 (C.D. Ill. July 8, 2021) ("When considering whether to grant Plaintiff leave to amend his Complaint yet again, the Court is mindful of the direction to 'freely give leave when justice so requires' and that *pro se* litigants should be given great latitude to amend complaints if it appears they could state a meritorious claim." (quoting *Kiebala v. Boris*, 928 F.3d 680, 684 (7th Cir. 2019))). If Whitted does not file

[7]To be sure, the Court could have declined to decide this issue because the IWPCA and breach of contract claims are appended under 28 U.S.C. § 1367(a). It is not clear whether Whitted can maintain the ADA claim, and if that claim does not survive the next round of pleading the Court will relinquish jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3); *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012) (explaining that "[w]hen federal claims drop out of the case," the trial court has "broad discretion to decide whether to … relinquish supplemental jurisdiction over the state-law claims"—with a "general presumption in favor of relinquishment").

a Second Amended Complaint by October 13, 2026, then the dismissal of the ADA retaliation claim will become final.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 25, 2026